(No. 4894.   July 17, 1928.)

GEORGE  F.  CARTER,  Respondent,  v.  J.  L.  NIDAY, Appellant.

[269 Pac. 91.]

B. F. Neal, for Appellant.

Martin & Martin, for Respondent.

T. BAILEY LEE, J.—Certain water users in Meridian precinct, Ada county, owned and operated in common a lateral ditch known as the Lower Hunter Lateral through which they received water from The Nampa & Meridian Irrigation District and Company in common with the defendant and appellant, who owns approximately 105 miner's inches of water in the distributing company. During the irrigating seasons of 1923 and 1924 plaintiff was selected by these users to act as "water-master" or "ditch rider" or "manager" of the common lateral. His duties, as provided by C. S., secs. 5632 and 5634, were to repair and maintain the lateral and distribute the waters thereof to the users thereunder. At their annual meeting in 1923 the water users adopted a resolution fixing the maintenance charge and water-master's salary at fifteen and twenty-five cents per miner's inch. Defendant paid his maintenance but refused to pay the salary assessment amounting to $26.21. In 1924 the maintenance was raised to twenty-five cents, and the water-master's salary fixed at a similar amount. Defendant paid $4.50 on maintenance and refused to pay anything further either on maintenance or water-master's salary, leaving an assessed balance of $47.92. To recover these balances together with a $35 attorney's fee, plaintiff water-master brought this action. He plead in two counts.

The first count charged that the water users in 1919 "formed themselves into a mutual, voluntary and unincorporated association of water users for the purpose of irrigation and for the purpose of the distribution of the water owned by each land owner and water user"; that the defendant was a member of such association, and attended and took part in all the meetings had in 1923 and 1924;

that the association levied the maintenance and salary assessments as hereinbefore detailed; that defendant refused to pay the sums aforementioned, and that plaintiff has been directed by the association to collect the same.

In the second count, plaintiff set up the entire first count and in addition plead a *quantum meruit*, alleging that during the seasons of 1923 and 1924, at defendant's special instance and request, he delivered defendant 104.85 inches of water from the common lateral, and that such service was reasonably worth the sum of twenty-five cents per inch of water so delivered.

Defendant demurred generally, both to the entire complaint and each count, and specially demurred for uncertainty, ambiguity, etc. He also interposed a motion to strike. The demurrers were overruled and the motion to strike partially sustained. Defendant then answered, practically denying all of plaintiff's allegations, but admitting that he was a land owner and user of some 105 inches of water through the Hunter Lateral, and that plaintiff was and "exercised the authority of manager" of said lateral during the irrigating season of 1924. By way of counterclaim he charged that by reason of plaintiff's arbitrary refusal to deliver him water through certain taps for a period of six days, his crops were damaged in the sum of $140 and that he was compelled to force the proper delivery of such water by a *mandamus* proceeding, working him the further damage in the sum of $50 attorney's fees, $5.50 witness fees, $10 filing fees and $3.80 sheriff's fees. A second count charged that plaintiff wrongfully refused to deliver certain of defendant's storage water, causing further crop damage in the sum of $100. The jury returned a verdict in plaintiff's favor for the full sum demanded including $35 attorney's fee, and allowing defendant nothing on his counterclaim. From the incident judgment, defendant appealed, assigning insufficiency of the evidence and numerous errors of law. There was no error in overruling the general demurrers. Admitting, as they did, the existence of the association, the members thereof had the

right to fix by resolution among themselves such maintenance charge and manager's salary as they saw fit.

■ It is contended that plaintiff was a public officer, and, the statute having failed to make any provision for his compensation, none could be collected by him. The plaintiff was selected as water-master or manager under the provisions of C. S., sec. 5632, which declares his duties as to water deliveries. C. S., sec. 5634, specifies his duties as to general maintenance and repairs, and provides that he may sue the individual water user who fails after three days' notice to contribute his required proportion of labor, materials or money necessary for repairs and maintenance. It is evident that the legislature intended that the cost of repairs and maintenance should be borne by the water users individually without recourse to any public fund they might later be taxed to reimburse. And the only logical conclusion to be reached is that, by remaining silent in regard thereto, the legislature intended the manager's salary to be paid in like manner. The statutory authority to select a manager carried with it the implied authority to pay him the reasonable value of his services. We do not think that the manager or water-master of a common lateral, selected by the water users under C. S., secs. 5632, 5633, is a public officer in any sense, especially since he draws no salary from the public treasury, is not required to give bond, nor take the oath required by C. S., sec. 399, of any and all persons "elected or appointed to fill any office created by the laws of the state of Idaho."

■ The count in *quantum meruit* stated a cause of action based on water deliveries and the reasonable value of that service, although it wholly failed to set forth the amount or reasonable value of any maintenance or repairs. There is an indirect reference to maintenance expenditures in the included first count, but the only pleading touching value is that the sum unpaid and due from the defendant is for maintenance charge "as fixed and determined by the said association." This would have been good pleading of a mutual assessment; it cannot avail as a *quantum meruit*.

There was error in overruling the special demurrer *in toto*. However, in view of the facts actually plead, we cannot see how defendant could have been ultimately prejudiced. The same may be said of the motion to strike, much of which it is impossible to follow, since a majority of the denotations of the motion does not correspond with the arrangement of the complaint as transcribed.

■■ Defendant urges that the court erred in letting the matter of maintenance and attorney's fee go to the jury, and in refusing to submit his requested interrogatories concerning the same. Both contentions are correct.

There was no proof of the organization of an association. Such proof as was offered consisted of statements that a water users association had been formed and its records destroyed by fire. There was no testimony as to the contents of such records, nor as to the nature, powers or purpose of such alleged association. The statements that an association had been formed were mere conclusions. No cause of action was proven upon the theory of association assessments under the first count; and, as has already been observed, there was no cause of action for maintenance charges plead under the second count. In order to recover an attorney's fee, it was essential to plead and prove a three days' notice to defendant to contribute his proportion toward maintenance and his subsequent failure to comply. In both instances plaintiff signally failed, showing neither verbal, personal notice nor service of written demand as required by C. S., sec. 7199.

■ Plaintiff fully detailed his services in delivering defendant's share of the allotted waters, and testified to the reasonable value thereof. The sum named was the rate fixed by the annual meeting of the water users and paid for like services by other users. It must be remembered that the defendant was present at all these meetings, that he consented to plaintiff's appointment in 1923 and did not oppose the selection of a manager in 1924, although he objected to selecting the plaintiff. He accepted plaintiff's services, and has at all times held him responsible for water

distribution. He must therefore pay the reasonable value of the service received.

■■ There is no merit in defendant's counterclaim for damages arising from the *mandamus* proceeding; that matter could have been determined only in the proceedings themselves, C. S., sec. 7264, and cannot, as a matter of law, be litigated in a collateral action. On conflicting evidence, the jury determined the crop damage adversely, and we cannot disturb its finding.

Since a proper judgment can be directed, it is unnecessary to grant a new trial, and the cause will be remanded with instructions to the trial court to modify the judgment entered, by striking therefrom the items of the attorney's fee of $35 and the maintenance charge for the year 1924, to wit, the sum of $21.71 with the accrued interest thereon from September 1, 1924, to the date of the original judgment. In all other respects the judgment is affirmed. All costs of this appeal, including transcript and filing charges, to be taxed equally against appellant and respondent.

Wm. E. Lee, C. J., and Budge, Givens and Taylor, JJ., concur.